IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MAGGIE'S AUTO SALES AND SERVICES, LLC, *d/b/a* EVERYONE DRIVEZ AUTO SALES, <br><br>          Plaintiff, <br><br>          vs. <br><br>STATE FARM FIRE AND CASUALTY CO., INC., <br><br>          Defendant. | No. 2:23-cv-03773-DCN <br><br>**ORDER** |

The following matter is before the court on defendant State Farm Fire and Casualty Co., Inc.'s ("State Farm") motion to compel discovery, ECF No. 14. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

This dispute arises out of State Farm's failure to cover plaintiff Maggie's Auto Sales and Services's ("Maggie's Auto" or "plaintiff") claim for property damage coverage on an insured 2013 Cadillac ATC (the "Covered Vehicle" or "Cadillac").[1] ECF No. 1-1, Compl. Maggie's Auto loaned money to a customer (the "Named Insured" or "Borrower") to purchase the Cadillac. The Borrower subsequently obtained an automobile insurance policy (the "Policy") from State Farm. The Borrower is a named insured under the Policy and the Policy shows Maggie's Auto as a "creditor" on its declarations page—meaning, the Policy insured Maggie's Auto's interest in the Covered

---

[1] Except where otherwise indicated, the facts described in the background section are taken from the complaint. ECF No. 1-1, Compl.

1

Vehicle at all relevant times. The Policy includes liability, comprehensive, and collision coverage.

In September 2022, the Cadillac incurred property damage. Some of the property damage resulted from the Cadillac being struck by gunfire. Some of the property damage resulted from an automobile colliding with the Covered Vehicle—however, State Farm does not believe it collided with another vehicle and instead posits that the property damage resulted from the Cadillac hitting a fixed object. After sustaining the damage, the Cadillac was towed to a body shop where it was declared "totaled" or a "total loss." No repairs were made.

On or around October 4, 2022, Maggie's Auto informed State Farm that it had repossessed the Cadillac "on paper" and owned it and Maggie's Auto also informed State Farm it was making a claim under the Policy for the property damage. Upon that notice, State Farm informed Maggie's Auto that it would send an adjuster to the body shop to inspect the Cadillac, and that inspection took place on or before October 11, 2022. State Farm notified Maggie's Auto that the Cadillac was a total loss and that it was taking possession of it. State Farm then towed the Cadillac to a business that auctions automobiles, including damaged and totaled vehicle. At that time, State Farm intended to honor Maggie's Auto's insurance claim, sell the Cadillac, and retain the proceeds.

However, multiple errors, and attempts to cover up those errors, allegedly followed. Namely: (1) a State Farm adjuster erroneously issued a payment to the body shop for repair work that had not been performed; (2) State Farm assigned more than one claim number to Maggie's Auto's claim; and (3) State Farm lost track of the Cadillac. After months of miscommunication and misdirection—during which the above errors

allegedly occurred and during which State Farm assured Maggie's Auto it would be paid for its claim—State Farm sent Maggie's Auto a letter, dated February 9, 2023, denying the claim. The letter stated, in relevant part, "After a thorough investigation, we have determined there is no coverage for the loss and it is not a loss payable to the insured." Compl. ¶ 30. State Farm later explained that it denied the claim because the damage to the front of the Cadillac was consistent with contact with a textured fixed object, rather than vehicle-to-vehicle contact. State Farm omitted any discussion of the damage caused by gunfire. Maggie's Auto emphasizes that the Policy, which included liability, comprehensive, and collision coverage, covers that damage such that State Farm should not have denied the claim.

On June 20, 2023, Maggie's Auto filed this complaint in the Charleston County Court of Common Pleas. ECF No. 1-1, Compl. The complaint alleges four causes of action: (1) breach of insurance contract, id. ¶¶ 38–47; (2) bad faith processing of insurance claim and refusal to pay benefits owed, id. ¶¶ 48–53; (3) conversion, id. ¶¶ 54–60; and (4) unjust enrichment, id. ¶¶ 61–64. On August 3, 2023, State Farm removed the action to federal court pursuant to diversity jurisdiction, 28 U.S.C. §§ 1332(a)(1), 1441.[2] ECF No. 1. On April 2, 2024, State Farm filed a motion to compel discovery. ECF No. 14. On April 16, 2024, Maggie's Auto responded in opposition. ECF No. 16. On April

---

[2] State Farm claims that there is complete diversity of citizenship and further alleges that the amount in controversy exceeds $75,000. ECF No. 1 ¶ 2. State Farm notes that Maggie's Auto alleges it is a citizen of South Carolina, whereas State Farm is organized under Illinois law with its principal place of business in Illinois. Id. ¶¶ 6–8. State Farm also asserts that there is a reasonable probability that the amount in controversy will exceed $75,000 because Maggie's Auto seeks policy benefits, the market value of the Cadillac, the value of the use of the vehicle, unspecified consequential damages, attorney's fees, and punitive damages. Id. ¶¶ 4–5.

24, 2024, Maggie's Auto filed a stipulation. ECF No. 18. As such, the motion is fully briefed and now ripe for review.

## II. STANDARD

### A. Discovery Generally

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case." United States ex rel. Adams v. Remain at Home Senior Care, LLC, 2022 WL 130942, at *1 (D.S.C. Jan. 14, 2022). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through clarifying, explaining and supporting its objections with competent evidence." Id. (internal quotation marks and citations omitted).

A discovery request is relevant if there is any possibility that the information sought might be relevant to the subject matter of the action. Id. "While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been 'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" Martin v. Bimbo Foods Bakeries Distrib., LLC, 313 F.R.D. 1, 5 (E.D.N.C. 2016) (quoting EEOC v. Sheffield Fin., LLC, 2007 WL 1726560 (M.D.N.C. June 13, 2007)) (internal citations omitted). "Relevance is not, on its own, a high bar." Va. Dep't of Corr. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019). Rule 26's proportionality requirement "mandates consideration of multiple factors in determining

whether to allow discovery of even relevant information." Gilmore v. Jones, 2021 WL 68684, at *3–4 (W.D. Va. Jan. 8, 2021). Such considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment.'") (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). That said, discovery is not limitless, and the court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed. R. Civ. P. 26(c).

### B. Motion to Compel

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanctions" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

> "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Oppenheimer v. Episcopal Communicators, Inc., 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020).
>
> > Thus, once the moving party has made "a prima facie showing of discoverability," the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery."
>
> Gilmore, 2021 WL 68684, at *3–4 (alteration in original) (quoting Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding whether to grant or deny a motion to compel. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (internal citation omitted); Erdmann v. Preferred Rsch., Inc., 852 F.2d 788, 792 (4th Cir. 1988) ("The scope and conduct of discovery . . . are within the sound discretion of the district court."); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court.").

### III.   DISCUSSION

State Farm moves for an order compelling Maggie's Auto to respond to paragraph 2 of State Farm's supplemental request for production of documents. ECF No. 14 at 1. Pursuant to Local Civ. Rule 7.02 (D.S.C.), counsel for State Farm certifies that he has attempted to resolve this dispute with Maggie's Auto's counsel but has, thus far, been unable to do so. Id.

State Farm first notes that Maggie's Auto's interrogatory answers list two categories of damages: (1) the value of the Cadillac and (2) lost profits of $17,304.03. Id.

6

at 2.  Maggie's Auto calculated the lost profits by calculating how it would have used the funds paid out for the claim under the Policy to buy and sell another car.  Id.  State Farm claims that Maggie's Auto's 2022 tax return may lead to the discovery of admissible evidence on this aspect of plaintiff's claim.  Id.  On January 19, 2024, State Farm served Maggie's Auto with a supplemental request to produce documents, with paragraph 2 requesting "the federal and state tax returns of [Maggie's Auto] for 2022."  Id.; see also ECF No. 14-1.  On March 29, 2024, Maggie's Auto responded to paragraph 2 with an objection based on two grounds: (1) State Farm's request to produce seeks confidential financial information of a highly sensitive nature; and (2) State Farm's request to produce is not proportional to the needs of the case.  ECF No. 14 at 2; see also ECF No. 14-2.

Based on the parties' briefs, the court finds that the sought tax forms are relevant to the claims for lost profit damages.  See ECF Nos. 14 at 1, 3; 16 at 4.  However, on April 24, 2024, Maggie's Auto filed a stipulation indicating that "it does not claim or seek to recover lost profits as damages in the above-captioned case."  ECF No. 18.  As set forth in the briefs before the court, the tax forms are only relevant to this pending matter if Maggie's Auto claims damages from lost profits.  See ECF No. 14 at 2.  Upon receipt of Maggie's Auto's stipulation that it does not seek lost profits, the court finds that the sought tax forms are no longer relevant to this case such that the forms do not qualify as admissible evidence within the scope of Rule 26(b)(1).  See ECF No. 18; Fed. R. Civ. P. 26(b)(1); see also Fed. R. Evid. 401, 402.  Consequently, the court denies the motion to compel.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to compel.

    **AND IT IS SO ORDERED.**

*[signature]*

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 1, 2024**
**Charleston, South Carolina**